UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| WILLIAM EDWARDS, III, | ) | No. CV 16-7481-PLA |
| Plaintiff, | ) ) | **MEMORANDUM OPINION AND ORDER** |
| v. | ) ) | |
| NANCY BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) ) ) ) | |
| Defendant. | ) ) | |

I.

## PROCEEDINGS

Plaintiff filed this action on October 6, 2016, seeking review of the Commissioner's[1] denial of his application for Disability Insurance Benefits ("DIB"). The parties filed Consents to proceed before the undersigned Magistrate Judge on October 25, 2016, and October 28, 2016. Pursuant to the Court's Order, the parties filed a Joint Stipulation (alternatively "JS") on June 22, 2017, that addresses their positions concerning the disputed issues in the case. [ECF No. 18.] The Court

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy Berryhill, the current Acting Commissioner of Social Security, is hereby substituted as the defendant herein.

has taken the Joint Stipulation under submission without oral argument.

## II.

## BACKGROUND

Plaintiff was born on June 5, 1950. [Administrative Record ("AR") at 18, 138.] He has past relevant work experience as a construction supervisor. [AR at 18, 50.]

On November 14, 2012, plaintiff filed his application for a period of disability and DIB, alleging that he has been unable to work since January 31, 2011. [AR at 138-41.] After his application was denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 10, 103-04.] A hearing was held on March 23, 2015, at which time plaintiff appeared represented by an attorney, and testified on his own behalf. [AR at 28-53.] A vocational expert ("VE") also testified. [AR at 50-53.] On April 17, 2015, the ALJ issued a decision concluding that plaintiff was not under a disability from January 31, 2011, the alleged onset date, through April 17, 2015, the date of the decision. [AR at 10-20.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 25.] When the Appeals Council denied plaintiff's request for review on August 16, 2016 [AR at 1-5], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008)

(citation and internal quotation marks omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (same). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (citation and internal quotation marks omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (citation and internal quotation marks omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.") (citation omitted).

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

### A.   THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995), as amended April 9, 1996. In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the

claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. Id. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

B.  THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since January 31, 2011, the alleged onset date.[2] [AR at 12.] At step two, the ALJ concluded that plaintiff has the severe impairments of "[n]o useful left eye vision; sleep apnea; bilateral sensorineural hearing loss with good word recognition; poorly controlled hypertension; type II diabetes; and depression." [Id. (citation omitted).] The ALJ found plaintiff's bilateral shoulder and bilateral knee complaints to be "vague and unsupported" and, therefore, not medically

---

[2] The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through March 31, 2016. [AR at 12.]

4

determinable impairments.[3] [Id.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing. [AR at 12-13.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[4] to perform medium work as defined in 20 C.F.R. § 404.1567(c),[5] except as follows: "[P]reclusion from working at unprotected heights; monocular vision; no noise above 90 dB unless wearing ear protection; when speaking on the telephone vocal interaction needs to be a little louder than usual conversation; and limitation to unskilled work." [AR at 13.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is unable to perform his past relevant work as a construction supervisor. [AR at 18, 50-51.] At step five, based on plaintiff's RFC, vocational factors, and the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff can perform, including work as a "grocery bagger" (Dictionary of Occupational Titles ("DOT") No. 920.687-014), and "hand packer" (DOT No. 920.587-018). [AR at 19, 52.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of January 31, 2011, through April 17, 2015, the date of the decision. [AR at 19-20.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ erred when she: (1) concluded that plaintiff has no severe

---

[3] Plaintiff testified at the hearing that he has had a "rotator's cuff surgery . . . [a]nd three other" surgeries on his shoulder. [AR at 39.] He also testified that he had right knee surgery in 2011 and that it sometimes "acts up." [AR at 40.]

[4] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[5] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

musculoskeletal impairments; (2) rejected the opinion of treating psychiatrist Glenn Miller, M.D.; and (3) rejected the opinion of treating ophthalmologist Douglas A. Katsev, M.D. [JS at 2.] As set forth below, the Court agrees with plaintiff, in part, and remands for further proceedings.

A.     THE ALJ'S STEP TWO FINDING

   1.     Legal Standard

At step two of the five-step process, plaintiff has the burden to provide evidence of a medically determinable physical or mental impairment that is severe and that has lasted or can be expected to last for a continuous period of at least twelve months. Ukolov v. Barnhart, 420 F.3d 1002, 1004-05 (9th Cir. 2005) (citing 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D)); see 20 C.F.R. §§ 404.1508, 404.1509, 404.1520(a)(4)(ii); see generally Bowen v. Yuckert, 482 U.S. 137, 148, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987) (Secretary may deny Social Security disability benefits at step two if claimant does not present evidence of a "medically severe impairment"). This must be "established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." 20 C.F.R. § 404.1508. The Commissioner's regulations define "symptoms" as a claimant's own description of her physical or mental impairment. 20 C.F.R. § 404.1528. "Signs," by contrast, "are anatomical, physiological, or psychological abnormalities which can be observed, apart from [the claimant's] statements . . . [,] [and] must be shown by medically acceptable clinical diagnostic techniques." Id. Finally, "[l]aboratory findings are anatomical, physiological, or psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques." Id. A claimant's statements about an impairment (i.e., "symptoms") "are not enough [by themselves] to establish that there is a physical or mental impairment." Id.

Step two is "a de minimis screening device [used] to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). A "severe" impairment, or combination of impairments, is defined as one that significantly limits physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520. An impairment or combination of impairments should be found to be "non-severe" only when the evidence establishes merely a slight abnormality that has no

more than a minimal effect on an individual's physical or mental ability to do basic work activities. Yuckert, 482 U.S. at 153-54 & n.11 (Social Security claimants must make "*de minimis*" showing that impairment interferes with ability to engage in basic work activities) (citations omitted); Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005); see also 20 C.F.R. § 404.1521(a). "Basic work activities" mean the abilities and aptitudes necessary to do most jobs, including "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling . . . ." 20 C.F.R. § 404.1521(b). It also includes mental functions such as the ability to understand, carry out, and remember simple instructions, deal with changes in a routine work setting, use judgment, and respond appropriately to supervisors, coworkers, and usual work situations. See Soc. Sec. Ruling ("SSR")[6] 85-28.

When reviewing an ALJ's findings at step two, the Court "must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [the claimant] did not have a medically severe impairment or combination of impairments." Webb, 433 F.3d at 687 (citing Yuckert, 841 F.2d at 306 ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here.")).

2. **Analysis**

Plaintiff contends that the record evidence demonstrates that he has a "severe lumbar spine impairment" [JS at 3], as well as a severe impairment affecting his bilateral hips. [JS at 4-5.] He submits, therefore, that the ALJ erred when she did not even address plaintiff's spinal and hip impairments at step two of her decision, and only noted at step two that plaintiff's bilateral shoulder and bilateral knee complaints were "vague and unsupported" and therefore did "not constitute medically determinable impairments." [JS at 5 (citing AR at 12).]

---

[6] "SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

Plaintiff contends that the "totality of the medical evidence" demonstrates he has a severe lumbar spine impairment. [JS at 3.] He notes that he was "consistently diagnosed" with lumbosacral intervertebral disc degeneration [JS at 3 (citing AR at 389, 392, 395, 399, 403)]; that during physical examination of his lumbar spine, his treating physician noted that plaintiff's forward flexion was limited to well above his ankles [JS at 3 (citing AR at 395, 399, 403)]; that he was found to have a positive right leg supine straight leg raising test on two occasions [JS at 3 (citing AR at 388, 392)]; that a lumbar spine x-ray on December 3, 2014, revealed osteophyte formation and endplate sclerosis [JS at 3 (citing AR at 403)]; that with respect to plaintiff's spine, a December 5, 2014, whole body scan reflected an "[i]ncreased uptake at the right L3 facet, right side of L4-L5 bodies, possibly an osteophyte complex, and increased uptake in the left L4-L5 facet [JS at 4 (citing AR at 405)]; that on January 26, 2015, his treating physician, Stuart R. Hutchinson, M.D., ordered an MRI of plaintiff's lumbar spine [id. (citing AR at 392)]; and that on February 11, 2015, Dr. Hutchinson noted plaintiff had "significant lumbar stenosis at L4-5 and L3-4," referred him to physical therapy, and administered a lumbar spine epidural steroid injection that same day. [Id. (citing AR at 388-89).]

With respect to plaintiff's bilateral hip pain, plaintiff submits that the record shows that he was "consistently diagnosed" with hip osteoarthritis, enthesopathy of the hip region, and hip pain [id. (citing AR at 395, 399, 403)]; he was found to have a positive Patrick-Fabere test and mild tenderness to palpation of the right hip, as well as tight hamstrings on both his right and left hips [id. (citing AR at 395, 399, 402)]; bilateral x-rays taken on April 16, 2014, showed mild bilateral hip osteoarthritis, mild bilateral hip joint space narrowing associated with marginal osteophyte formation slightly greater on the left, and focal osseous proliferation at the right femoral head neck junction [id. at 4 (citing AR at 407)]; and bilateral x-rays taken on December 3, 2014, showed mild joint space narrowing, subchondral changes including cysts and/or sclerosis, and osteophytes. [Id. (citing AR at 406).] The December 5, 2014, whole body scan also reflected mild, slightly decreased uptake in both hips, typical for mild osteoarthritis, slightly more pronounced on the right. [AR at 405.] The treatment visit notes also reflect that on December 3, 2014, plaintiff complained of deep, generalized right hip pain radiating to below his knee, that had been present

for many years and had increased again in the past few months. [AR at 402 (see also AR at 394 (same)).] He also described symptoms of weakness, instability leading to falls, and pain at rest. [AR at 398, 402.]

Plaintiff submits that the objective clinical findings are entirely consistent with his testimony at the hearing regarding his symptoms and limitations attributable to his lumbar spine and hip impairments, including that he suffers from significant pain, has difficulty maintaining his balance while walking, cannot sit in one position for extended periods of time, has to lie down throughout the day, and is limited in the amount of weight he can lift. [JS at 4-5 (citing AR at 39, 46-50).] He also contends that the medical evidence and his testimony clearly demonstrate that his lumbar spine and hip impairments would cause more than a minimal effect on his ability to perform basic work activities and, therefore, should have been found to be "severe" impairments at step two. [JS at 5.] He notes that he was 60 years old on his alleged onset date, and 65 years old on his date last insured, and if he were limited to working at the light or sedentary levels, he would have been found disabled under the Medical-Vocational Guidelines. [Id. (citing 20 C.F.R. § 404, subpt. P, app. 2, §§ 201.06, 202.06).]

Defendant counters that the ALJ "found [that] plaintiff's examinations did not show spine or hip impairments that more than minimally affected his ability to function in a work setting." [JS at 6 (citing AR at 12).] Defendant notes that plaintiff's diagnoses alone are not enough to find a severe impairment at step two. [JS at 6-7.] Rather, that determination "requires an assessment of the functionally limiting effects of [the] impairment(s)." [JS at 7 (citing SSR 96-3p (stating that symptom-related limitations and restrictions must be considered)).] Defendant submits that the ALJ discussed Dr. Hutchinson's orthopedic findings, and that her discussion supports her "step two finding of no severe back and hip limitations . . . ." [Id. (citing AR at 16, 388, 392, 395).] Defendant also argues that even if the ALJ should have found severe back and hip impairments at step two, the error was harmless because the ALJ stated that she "'considered all symptoms' in crafting the RFC," and "explicitly considered orthopedic findings," by virtue of the fact that she summarized Dr. Hutchinson's records. [Id. (citing AR at 16).]

Defendant's arguments are not persuasive. Indeed, a significant foundational problem with

defendant's argument is that the ALJ never even mentioned plaintiff's spine or hip impairments at step two -- instead referring only to his "vague and unsupported" bilateral shoulder and knee complaints as not being severe impairments. [AR at 12.] Neither does the ALJ's brief summary of Dr. Hutchinson's medical records -- which she "cherry-picked" with respect to their mild findings -- serve to constitute a valid assessment of the functionally limiting effects of those impairments, or even demonstrate that she actually "*considered* orthopedic findings . . . when formulating the RFC." [See JS at 7 (emphasis added).] For instance, in her summary of his records, after the ALJ noted Dr. Hutchinson's diagnoses of lumbar degenerative disc disease and lumbar stenosis, and that he had referred plaintiff for physical therapy and an epidural steroid injection, the ALJ cited to his treatment notes only for the following entries: "[o]nly mild osteoarthritis"; "healthy appearing pleasant in no acute distress, and normal body habitus"; "fully oriented"; "[m]ood and affect are appropriate"; "no apparent short term memory deficits"; "able to perform toe walking, heel walking, tandem and normal gait"; "mild" lumbar tenderness, "with no swelling and with normal alignment"; and "normal" motor strength. [AR at 16 (citations and internal quotation marks omitted).] Notably omitted, from the very same records, were the following entries: plaintiff's complaints of low back pain, and pain with motion of the hip on examination; plaintiff's report that his symptoms include stiffness, weakness, and instability giving way to falls, and that his symptoms are aggravated by activity, walking, stairs/hills, prolonged standing, prolonged sitting, going from sit to stand, weightbearing, and bending/squatting; and Dr. Hutchinson's reported signs and findings of: positive right supine straight leg raising test results [AR at 388, 392]; inflammatory polyarthropathy [see, e.g., AR at 386, 390, 393]; "*significant* lumbar stenosis at L4-5 and L3-4" [see, e.g., AR at 389 (emphasis added)]; absent bilateral plantar reflexes [see, e.g., AR at 388, 392]; diminished bilateral knee reflexes [see, e.g., AR at 388, 392]; enthesopathy of the hip region [see, e.g., AR at 386, 390, 393]; and right hip myofascial pain with contribution from the lumbar spine. [See, e.g., AR at 396.] Indeed, the ALJ never even discussed the weight she gave to Dr. Hutchinson's opinions, let alone provide specific and legitimate reasons supported by substantial evidence for rejecting his opinions regarding plaintiff's spine and hip impairments -- if indeed that is what she intended. See Marsh v. Colvin, 792 F.3d 1170, 1172-73 (9th Cir. 2015).

Also of note, the ALJ gave "great weight" to the 2013 opinions of the State agency medical consultants, who found that plaintiff had an RFC for a range of medium work, finding their opinions to be "fully credible." [AR at 18.] Although the opinion of a non-examining physician "cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician," Lester, 81 F.3d at 831, state agency physicians are "highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); SSR 96-6p; Bray v. Astrue, 554 F.3d 1219, 1221, 1227 (9th Cir. 2009) (the ALJ properly relied "in large part on the DDS physician's assessment" in determining the claimant's RFC and in rejecting the treating doctor's testimony regarding the claimant's functional limitations). Reports of non-examining medical experts "may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). In this case, however, the State agency medical consultants in 2013 did not have the benefit of reviewing Dr. Hutchinson's medical records -- and the records they reviewed apparently did not include any significant discussion of plaintiff's back and hip impairments. [See AR at 54-69, 71-86.] Therefore, with respect at least to those impairments, the Court cannot find that their reports are consistent with and supported by other evidence in the record. As such, they may not serve as substantial evidence with respect to those impairments.

An ALJ must consider all of the relevant evidence in the record and may not point to only those portions of the record that bolster her findings. See Reddick, 157 F.3d at 722-23 (it is impermissible for the ALJ to develop an evidentiary basis by "not fully accounting for the context of materials or all parts of the testimony and reports"); see also Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (error for an ALJ to ignore or misstate the competent evidence in the record in order to justify her conclusion). An ALJ may not cherry-pick evidence to support a conclusion that a claimant is not disabled, but must consider the evidence as a whole in making a reasoned disability determination. Holohan, 246 F.3d at 1207 (concluding that the ALJ's basis for rejecting the treating physician's medical opinion was not supported by substantial evidence because the ALJ "selectively relied on some entries . . . and ignored the many others that indicated continued,

severe impairment."). That is exactly what the ALJ did here when she summarized selective portions of Dr. Hutchinson's records showing mild or negative results, despite the abundance of evidence in his records -- and the record generally -- showing just the opposite.

In short, the ALJ's failure to explicitly consider whether plaintiff's spine and hip impairments met the step two de minimis threshold of severity, especially in light of the fact that if he was limited to light or sedentary work he could be considered disabled, was not harmless error.

Remand is warranted on this issue.

### B. MEDICAL OPINIONS

#### 1. Legal Standard

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also 20 C.F.R. §§ 404.1502, 404.1527.[7] The Ninth Circuit has recently reaffirmed that "[t]he medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the claimant's] case record.'" Trevizo v. Berryhill, 862 F.3d 987, 997 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)). Thus, "[a]s a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester, 81 F.3d at 830; Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (citing Ryan, 528 F.3d at 1198); Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222 (9th Cir. 2010). "The opinion of an

---

[7] The Court notes that for all claims filed on or after March 27, 2017, the Rules in 20 C.F.R. § 404.1520c (not § 404.1527) shall apply. The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c. Thus, the new regulations eliminate the term "treating source," as well as what is customarily known as the treating source or treating physician rule. See 20 C.F.R. § 404.1520c; see also 81 Fed. Reg. 62560, at 62573-74 (Sept. 9, 2016). However, the claim in the present case was filed before March 27, 2017, and the Court therefore analyzed plaintiff's claim pursuant to the treating source rule set out herein. See also 20 C.F.R. § 404.1527 (the evaluation of opinion evidence for claims filed prior to March 27, 2017).

examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830; Ryan, 528 F.3d at 1198.

"[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons." Trevizo, 862 F.3d at 997 (citing Ryan, 528 F.3d at 1198); Carmickle, 533 F.3d at 1164 (citation and internal quotation marks omitted); Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Trevizo, 862 F.3d at 997 (citing Ryan, 528 F.3d at 1198); Carmickle, 533 F.3d at 1164 (citation and internal quotation marks omitted); Ryan, 528 F.3d at 1198; Ghanim v. Colvin, 763 F.3d 1154, 1160-61 (9th Cir. 2014); Garrison, 759 F.3d at 1012. An ALJ should weigh the physician's opinion according to factors such as the nature, extent, and length of the physician-patient working relationship, the frequency of examinations, whether the physician's opinion is supported by and consistent with the record, and the specialization of the physician. Trevizo, 862 F.3d at 997; see 20 C.F.R. § 404.1527(c)(2)-(6). The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick, 157 F.3d at 725. The ALJ "must set forth his own interpretations and explain why they, rather than the [treating or examining] doctors', are correct." Id.

### 2. Dr. Miller

On March 14, 2013, Dr. Miller, plaintiff's treating psychiatrist between February 2013 and December 2014, completed a Mental Disorder Questionnaire Form ("Form"). [AR at 303-07.] In the Form, he noted that plaintiff had been diagnosed with a major depressive disorder, and a generalized anxiety disorder. [AR at 307.] Dr. Miller opined that he did "not anticipate significant improvement" in plaintiff's condition, and that plaintiff "would have significant difficulties adapting to the work environment." [AR at 306-07.]

The ALJ rejected Dr. Miller's opinion:

Regarding the statement of Dr. Miller that [plaintiff] would have difficulty adapting

to the work environment, this statement is undermined by Dr. Miller's own observations that [plaintiff] appeared calm and relaxed, with good focus and concentration, that he was "really beginning to enjoy life" and was doing well. At most, "slightly diminished memory" was assessed at one of [plaintiff's] infrequent (every 3 months) visits, and no history of any psychiatric hospitalizations.

[AR at 17-18 (citation omitted).]

Plaintiff contends that the ALJ selectively cited Dr. Miller's observations, and ignored his observations that plaintiff was "only moderately well kempt [and] groomed," appeared to be depressed and withdrawn, was easily frustrated and angered, and had diminished concentration and attention. [JS at 9 (citing AR at 303-06).] He argues that the fact that he only saw Dr. Miller every three months was not a specific and legitimate reason for discounting Dr. Miller's opinion, because, as plaintiff testified at the hearing, he only sees Dr. Miller every three months "because [he] can't afford him." [AR at 41.] Failure to obtain treatment because of insurance problems, lack of insurance, and/or because one cannot afford the treatment, even if one is insured, are not satisfactory reasons to deny disability benefits. Trevizo, 862 F.3d at 1002-03.

Defendant submits that Dr. Miller provided his report shortly after he first examined plaintiff, and, therefore, that it "was reasonable and proper for the ALJ to conclude that [Dr. Miller's later treatment notes] showed marked improvement by late 2013 and 2014 and demonstrated that Dr. Miller's early 2013 opinion (that Plaintiff would have trouble adapting to a work environment) should not weigh heavily in assessing Plaintiff's RFC." [JS at 12.]

The Court finds that the fact that Dr. Miller's later treatment notes showed improvement in plaintiff's mental state and, therefore, did not support his earlier assessment, was a specific and legitimate reason to discount his March 2013 opinion.

### 3.  Dr. Katsev

Dr. Katsev saw plaintiff from June 2009 through March 2015 for his eye problems. On March 23, 2015, he wrote a letter on plaintiff's behalf in which he opined that plaintiff's "[c]hronic edema is making vision uncorrectable with chronic pain, [which] has made work near impossible . . . ." [AR at 409.] Dr. Katsev noted that plaintiff had already undergone three failed corneal transplants and, although Dr. Katsev was unsure how to proceed, he was not presently planning

to repeat another transplant. [Id.] As a result, plaintiff is essentially blind in his left eye. [AR at 12, 33, 409.] The ALJ rejected Dr. Katsev's opinion by stating, "This appears to be a sympathetic opinion, because [plaintiff's] subjective complaints appear to be the basis for the doctor's findings. [Plaintiff] retains his vision in his right eye, and his activities of daily living appear unrestricted by vision limitation, including continued driving." [AR at 17.]

The ALJ fails to point to any evidence or medical records, however, that reflect that Dr. Katsev was anything but professional in conducting his examinations and writing his reports or that "sympathy" for plaintiff played any role in writing his March 23, 2015, letter. Neither does she point to evidence that would suggest that Dr. Katsev's opinion was based solely on plaintiff's subjective complaints and not on his almost six years of assessment and treatment of plaintiff's eye problems. Indeed, in one treatment note dated November 7, 2012, Dr. Katsev observed that plaintiff's eye was "slight red with Chronic irritation, [which] makes it difficult to work a full day without getting red and blurry." [AR at 291.] Dr. Katsev also specifically stated in his letter that plaintiff's edema -- an objective medical finding -- contributes to making plaintiff's vision uncorrectable and causes chronic pain. [AR at 409.]

The ALJ also relied on the facts that plaintiff retains his vision in his right eye, and that his activities of daily living appear unrestricted by vision limitation. However, Dr. Katsev clearly stated that plaintiff's chronic edema with chronic pain is the reason that "work [is] near impossible" for plaintiff. [Id.] Plaintiff described his daily eye pain as a nine out of a ten on a zero to ten pain scale [AR at 42], and described it as the primary problem that is keeping him from working. [AR at 39.] Yet, the ALJ fails to address plaintiff's eye *pain* in her decision, relying instead on his retained right eye vision, and Dr. Katsev's alleged "sympathy," as reasons to discount Dr. Katsev's opinion.

The ALJ's reasons for discounting Dr. Katsev's opinion were not specific and legitimate. Remand is warranted on this issue.

/
/
/

# VI.

# REMAND FOR FURTHER PROCEEDINGS

The Court has discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See Lingenfelter v. Astrue, 504 F.3d 1028, 1041 (9th Cir. 2007); Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Benecke, 379 F.3d at 593-96.

In this case, there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, the ALJ shall consider at step two whether plaintiff's spine and hip impairments are severe.[8] Second, the ALJ shall reassess the opinions of Dr. Katsev.[9] To the extent the ALJ on remand, based on the above, also reassesses plaintiff's subjective symptom testimony, she shall do so in accordance with SSR 16-3p, and either credit his testimony as true, or provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting or rejecting any testimony. See also Trevizo, 862 F.3d at 1000 n.5; Treichler, 775 F.3d at 1103 (citation omitted) (the "ALJ must identify the testimony that was not credible, and specify 'what evidence undermines the claimant's complaints.'"); Brown-Hunter v. Colvin, 806 F.3d 487, 493-94 (9th Cir. 2015) (the ALJ must identify the testimony he found not credible and "link that testimony to the particular parts of the record" supporting his non-credibility determination). Finally, the ALJ shall reassess plaintiff's RFC and determine, at step five, with the

---

[8] Nothing in this decision is intended to prevent plaintiff on remand from providing further medical records.

[9] If appropriate, the ALJ shall apply 20 C.F.R. § 404.1520c on remand. (See supra note 7).

assistance of a VE if necessary, whether there are jobs existing in significant numbers in the national economy that plaintiff can still perform.[10] See Shaibi v. Berryhill, __ F.3d __, 2017 WL 3598085, at *6-7 (9th Cir. Aug. 22, 2017).

## VII.
## CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: August 28, 2017

　　　　　　　　　　　　　　　　　　／s／ Paul L. Abrams
　　　　　　　　　　　　　　　　　　PAUL L. ABRAMS
　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE

---

[10] Nothing herein is intended to disrupt the ALJ's step four finding that plaintiff is unable to return to his past relevant work.